IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING MOTION** |
| | ) | **TO RECONSIDER ORDER OF** |
| v. | ) | **DETENTION** |
| | ) | |
| Sean David Snyder, | ) | Case No.: 1:25-cr-00255 |
| | ) | |
| Defendant. | ) | |

On November 19, 2025, Defendant was charged by way of indictment with seven counts: (1-3) Travel with Intent to Engage in Illicit Sexual Conduct; (4-6) Engaging in Illicit Sexual Conduct in Foreign Places; and (7) Possession of Materials Containing Child Pornography. (Doc. No. 2). Defendant had his initial appearance and was arraigned on November 24, 2025. (Doc. No. 7). Defendant was ordered detained pending a detention hearing. (Doc. No. 9).

A detention hearing was held on December 12, 2025. (Doc. No. 38). At the conclusion of the hearing, Defendant was ordered detained pending trial as there was probable cause to find Defendant committed an offense listed in 18 U.S.C. § 3142(e)(3) and has not presented sufficient evidence to rebut the presumption of detention. (Doc. No. 35).

Defendant filed a *Motion to Reconsider Order of Detention* on March 6, 2026. (Doc. No. 57). Therein, Defendant requested the court reopen the issue of detention as new information exists that was not known at the time of the detention hearing that has a material bearing on the issue of release or detention. Defendant further asserted that he has rebutted the statutory presumption of detention and that conditions exist which would reasonably assure his appearance and the safety of the community. In support of this request, Defendant points in part to the fact that while the alleged conduct is serious, seriousness alone does not mandate detention, and "[t]here are no

1

allegations of domestic victims, domestic contact offenses, or ongoing conduct within this jurisdiction, weighing in favor of release under strict and enforceable domestic conditions." (Doc. No. 57 at 5). Defendant further points at the weight of the evidence, arguing that the weight of the evidence is presently limited, and not fully reviewable, as many of the United States' allegations rely on statements and documentation obtained from Thai authorities, including medical records that, as of the detention hearing, had not been translated into English, and to date, have not been received by Defendant's counsel. Defendant also argues he is a long-standing member of the community and owner of a local business. While he has an international travel history, he no longer possesses a U.S. passport and has not possessed a foreign passport. As previously noted, all alleged victims reside outside of the United States, which Defendant argues further mitigates concerns Defendant would flee this jurisdiction. Finally, as to risk of flight, Defendant contends that the United States' concern pertaining to Defendant's international contacts is materially diminished as international flight is not reasonably feasible without his passport, and he returned to the Untied States knowing he was being investigated by the FBI.

If released, Defendant advised that he is willing to consent to strict conditions, including GPS monitoring, the surrender of any additional travel documents, and prohibition of applying for replacement documents. He also notes that if released, he can reside with his adult son locally at a loft located on the second floor, above his place of business, and is willing to manage his business, appear before the court as required, support his family, and comply with all conditions imposed by this Court.

The same day, the United States filed a response in opposition to Defendant's motion. (Doc. No. 58). While the United States agrees with Defendant that the retention of new counsel in this circumstance may warrant the Court's review of its prior order of detention, it disagrees with the

Defendant that the 18 U.S.C. § 3142(g) factors weigh in favor of release. The United States specifically requests the Court continue to detain Defendant pending trial as clear and convincing evidence establishes that if released, Defendant will continue to endanger the community, namely Minor Victim #1 and Minor Victim #2, and a preponderance of the evidence establishes Defendant is a flight risk and will not follow any condition or combination of court-imposed conditions if released. The United States also points to recorded jail calls, many of which occurred after the detention hearing, wherein Defendant "demonstrate[s] he has the intent to tamper with the testimony of MINOR VICTIM #1 and MINOR VICTIM #2 and/or make them unavailable at trial." (Doc. No. 58 at 11). Finally, the United States argues the recorded jail call statements serve as a basis for it to renew its request for detention under 18 U.S.C. § 3142(f)(2)(B), as Defendant is attempting to obstruct justice and intimidate prospective witnesses.

    A detention hearing may be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). When considering whether there are conditions of release that will reasonably assure a defendant's sober appearance at future proceedings and the safety of the community and if defendant were he released into it, the court may consider available information, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of danger to any person or the community were defendant released. 18 U.S.C. § 3142(g)(1)-(4).

    While the retention of new counsel may constitute new information that was not known at the time of the detention hearing, the court is not inclined to reopen and revisit the issue of

3

detention and agrees with the United States that the available information does not warrant conditional release. At the time of the December 12, 2025, detention hearing, the court opined as follows:

> This is a situation where Defendant faces a rebuttable presumption of detention as to risk of flight and danger to the community. The court does not believe the presumption has been rebutted. Even if the presumption were rebutted, the court would then turn its attention to the 3142(g) factors and the fact this is a presumption case. Here, Defendant has limited criminal history, but there has been detailed reporting of minor victims. There is a history of mental health issues, as noted at the time of Defendant's honorable discharge from the military. Defendant has ties to the community, but has more substantial ties to Thailand, Nicaragua, and the United Kingdom. There is also the issue of hidden applications, which gives the court concern. There is no reported income to support independent living, nor is there an appropriate release option with the level of security and supervision the court would require, where here Defendant has an extensive international travel history with multiple forms of identification. There is also the concern that this matter involves alleged child victims, who are among the most vulnerable. Defendant's name shall be placed on the list for potential placement at a residential reentry center.

(Doc. No. 35).

Defendant argues he is willing to submit to comprehensive restrictions, monitoring, and verification measures to eliminate any risk of flight, and any concerns regarding his international ties, including connections to Thailand, Nicaragua, and the United Kingdom, are alleviated as all known travel documents, consisting of his U.S. Passport, are now in the Government's possession. (*See* Doc. No. 57 at 2-3). While Defendant is correct that Special Agent Russell testified at the time of the detention hearing that Defendant's passport was no longer a concern for potential travel as he no longer had access to it, the court would be remiss not to acknowledge the United States' prior argument that while lack of a passport may make international travel more difficult, it does not render it impossible.[1]

---

[1] Of similar note, testimony at the December 12, 2025, detention hearing describes Defendant as having several forms of identification. (*See* Doc. No. 51 at 21).

The court also recollects Defendant's initial refusal to turn over his passport without the issuance of a federal search warrant, or his initial refusal to provide a sample of his fingerprints and DNA to CODIS upon his arrest. While this information alone is not dispositive, it is something the court can consider.

Defendant's proposed release option is to reside with his adult son at a loft located on the second floor above his place of business. Defendant argues this provides a stable, verifiable address suitable for supervision. The court previously considered this release option at the time of the December 12, 2025, detention hearing, where it was determined to be an inappropriate release option as it did not have a level of supervision and security the court would require given his history of international travel and potential use or access to a number of identifications. There is nothing new in the instant motion that would warrant the court reconsidering its previous finding that the loft was an inappropriate release option.

The Defendant further contends that the weight of the evidence is limited, and not fully reviewable, with the Government's allegations relying heavily on statements and documentation obtained from Thai authorities, including medical records that had not been translated into English at the time of the detention hearing. Defendant further asserts that to date, his counsel does not have access to this documentation. In response, the United States provided that the translated medical records have been provided to Defendant as of January 30, 2026, and acknowledged that this matter involves approximately 3,725 Bates-numbered documents, as well as several native audio and video files, making the identification of particular documents difficult. Accordingly, the United States provided Defendant's counsel with a guide to use as reference in locating documents in the United States' discovery. Based on this information, the court is not inclined to address

Defendant's argument that continued detention is unjustified, particularly on the basis of incomplete discovery and continued trial.

The court recognized at the time of the detention hearing that Defendant has a limited criminal history but also took into consideration the significant detailing and reporting of alleged minor victims. The court also considered Defendant's ties to the community, including his local addresses as proffered by defense counsel, his local business, and local contacts, including his son, but also weighed his familial ties to Thailand, Nicaragua, and the United Kingdom. Even acknowledging Defendant's ties to the community, the court remains concerned with his substantial ties outside of this District and lengthy international travel history and potential access to numerous forms of identification.

Lastly, the court considers the nature and seriousness of danger to any person or the community. The alleged victims in this matter do not reside in the United States. Even so, the court is not convinced this sufficiently mitigates the potential danger to the alleged victims were Defendant to be released. In its response, the United States provided synopses of audio and video recorded jail calls between November 25, 2025, to the present date, containing statements between Defendant and Jovelyn Patac, and between Defendant and his adult son, Caidin Snyder. The synopsis demonstrates Defendant's attempts to obstruct and tamper with the testimony of Minor Victim #1 and Minor Victim #2, who are the charged victims in this matter, or to make them unavailable to testify at trial. This is of great concern to the court. Most of the synopsis occurred after the December 12, 2025, detention hearing, which demonstrates that Defendant is unlikely to comply with court-imposed conditions if released, and shows an intent to tamper with witness testimony or to make potential witnesses available at trial. This directly contemplated by 18 U.S.C. § 1342(f)(2), wherein the court can consider "a serious risk that such person will obstruct or

attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror" in its determination of whether there are any conditions or combination of conditions available that would reasonably assure the appearance of such person as required and the safety of any other person and the community.

For the reasons articulated above, the court **DENIES** Defendant's *Motion to Reconsider Order of Detention*. (Doc. No. 57).

**IT IS SO ORDERED.**

Dated this 9th day of March, 2026.

>  */s/ Clare R. Hochhalter*
>  Clare R. Hochhalter, Magistrate Judge
>  United States District Court